IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ALVIN MITCHELL,                          )
                                         )
                    Plaintiff,           )
                                         )
         v.                              )        1:19CV130
                                         )
WINSTON-SALEM STATE UNIVERSITY,          )
ELWOOD ROBINSON, CAROLYNN                )
BERRY, and IVEY BROWN,                   )
                                         )
                    Defendants.          )


## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Plaintiff Alvin Mitchell brings seven state-law claims and one federal claim against Defendants Winston-Salem State University[1] ("WSSU"), Elwood Robinson, Carolynn Berry, and Ivey Brown. (Doc. 6.) Defendants move to dismiss Plaintiff's claims pursuant to Rules 12(b)(1), (2) and (6) of the Federal Rules of Civil Procedure. (Doc. 13.)

For the reasons set forth herein, the court will grant Defendants' motion with regard to Plaintiff's § 1983 due process

---

[1] Plaintiff originally captioned this case listing "Winston-Salem State Univ. Board of Trustees" as a defendant instead of "Winston-Salem State University." However, Plaintiff lists "Winston-Salem State University" as a defendant in the Amended Complaint, instead of "Winston-Salem State Univ. Board of Trustees." (Amended Complaint (Doc. 6) ¶ 2.) The court will therefore treat WSSU as the defendant and the case caption is hereby amended to reflect this change.

claim and will decline to exercise supplemental jurisdiction over the remaining state claims. The court will dismiss the remaining claims without prejudice.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint . . . ." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020) (citing King v. Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016)). The facts, taken in the light most favorable to Plaintiff, are as follows.

### A.    Factual Background

#### 1.    Parties

Plaintiff is a citizen of North Carolina. (Amended Complaint ("Am. Compl.") (Doc. 6) ¶ 1.) Defendant WSSU is a "constituent institution of the University of North Carolina established pursuant to N.C. Gen. Stat. § 116-4." (Id. ¶ 2.) Defendant Elwood Robinson is the Chancellor of WSSU. (Id. ¶ 3.) Defendant Carolynn Berry was the Interim Provost and Vice Chancellor for Academic Affairs during the relevant time period. (Id. ¶ 4.) Defendant Ivey Brown is General Counsel for WSSU. (Id. ¶ 5.) Defendants Robinson, Berry, and Brown (together, "Individual Defendants") are all employed by WSSU. (Id. ¶¶ 3-5.)

### 2.   Plaintiff's Employment with WSSU

Plaintiff was hired as an Associate Professor in WSSU's Department of Social Sciences in July 2006 and was granted tenure in December 2008. (Id. ¶¶ 17–18.)

Between the summer of 2007 and the summer of 2017, Plaintiff "consistently" taught summer courses at WSSU, teaching on average three or four courses. (Id. ¶ 19, 22–23.) Plaintiff taught these summer courses as an associate professor "under a separate, supplemental, teaching contract," under which he earned supplemental pay. (Id. ¶ 22, 24–25.)

### 3.   Plaintiff's Suspension and Dismissal

On August 31, 2017, Plaintiff received a Notice for Imposition of Serious Sanction (the "Dismissal Letter") from Defendant Berry. (Id. ¶ 25.) "The Dismissal Letter notified Plaintiff that he would immediately be placed on 'suspension with pay.'" (Id. ¶ 26.) The Dismissal Letter also "notified Plaintiff of his right to appeal the recommendation for dismissal, but it did not provide a right to appeal the suspension." (Id. ¶ 28.) "The last two sentences of the Dismissal Letter provide[d]: 'Your suspension with pay will terminate with the exhaustion of your appeal rights. Please refer to the Faculty Handbook and The Code of the University of North Carolina Board of Governors [("the Code")] for more information.'" (Id. ¶ 33.)

The Dismissal Letter stated several reasons for Plaintiff's suspension and dismissal.[2] Defendant Berry, in the Dismissal Letter, accused Plaintiff of failing to open an online course for the 2017–2018 academic year, despite Plaintiff's department chair asking him to do so. (Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Br.") (Doc. 14) Ex. A, Dismissal Letter (Doc. 14-1) at 1.) Plaintiff also allegedly gave a student an Incomplete grade. (Id. at 2.) The student allegedly turned in the assignments to complete the requirements, but Plaintiff failed to respond, resulting in the student receiving an F, which impacted the student's financial aid and his ability to register for classes the following semester. (Id.)

Further, Plaintiff allegedly refused to respond to his department chairs regarding this matter, which required them to address Plaintiff in person. (Id.) Allegedly, "University Police was called due to safety concerns related to the hostile and erratic behavior that was displayed on this date." (Id.)

---

[2] While Plaintiff did not attach the Dismissal Letter to his Amended Complaint, the court may consider documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Here, the Dismissal Letter is integral to the complaint, given Plaintiff refers to it numerous times throughout the Amended Complaint. (See, e.g., Am. Compl. (Doc. 6) ¶¶ 25–26, 33.) Plaintiff also has not contested the Dismissal Letter's authenticity. The court finds it may properly consider the Dismissal Letter in its analysis of the present motion.

Finally, Defendant Berry accused Plaintiff of unprofessional interactions, including sending "derogatory and racially charged communications to one of [his] department chairs." (Id.)

Plaintiff submitted his notice of appeal on September 9, 2017. (Am Compl. ¶ 34.)

### 4. **WSSU Surveillance Videos**

Plaintiff's attorney requested surveillance footage regarding the on-campus incident involving Plaintiff. (Id. ¶¶ 35–36.) WSSU did not produce the footage, and Plaintiff alleges Defendant Brown "provided contradicting explanations for why the footage was not produced, by erroneously stating that there were no cameras inside the building and later saying that the relevant footage had been taped over." (Id. ¶ 37.) Plaintiff alleges this footage would have assisted Plaintiff in presenting his case to the WSSU Faculty Hearing Committee (the "Faculty Committee"). (Id. ¶¶ 42–43.)

### 5. **Faculty Committee Hearing and Plaintiff's Appeal**

The Faculty Committee held a hearing on Plaintiff's suspension on January 10, 2018. (Id. ¶ 44.) The Faculty Committee "unanimously determined that WSSU failed to meet its burden of proof to show by 'clear and convincing' evidence that sufficient grounds existed to support Plaintiff's dismissal," and "recommended Chancellor Robinson not accept the recommendation for Plaintiff's dismissal." (Id. ¶¶ 45–46.)

Defendant Robinson reviewed the Committee's recommendation, "disagreed that WSSU failed to meet its burden of proof, and on January 30, 2018, asked the Faculty Committee to reconvene the hearing to take evidence from Plaintiff." (Id. ¶ 47.) On February 14, 2018, "Plaintiff notified the Faculty Committee that he had no further evidence to present," after expressing concerns that Defendant Robinson was violating procedures set out in the Code. (Id. ¶ 48.) The following day, the "Faculty Committee unanimously renew[ed] its recommendation to the Chancellor that Plaintiff not be dismissed." (Id. ¶ 49.) Defendant Robinson renewed his decision to dismiss Plaintiff on March 7, 2018. (Id. ¶ 50.)

Plaintiff appealed Defendant Robinson's recommendation to the WSSU Board of Trustees on March 20, 2018. (Id. ¶ 51.) On April 5, 2018, and April 11, 2018, the Vice Chancellor sent Plaintiff procedural instructions for his appeal. (Id. ¶ 52.) Plaintiff submitted his objections to the proposed record on appeal to the Board of Trustees, though Plaintiff alleged he never received a response concerning the objections. (Id. ¶ 53.)

The Board of Trustees notified Plaintiff on August 6, 2018, that it was upholding Defendant Robinson's dismissal recommendation. "The letter stated that the Board of Trustee's decision was made based on 'the written transcript and the related exhibits,' rather than the entire record." (Id. ¶ 54.)

The letter further stated, "This decision is final, except you may file by formal notice a written petition for review with the Board of Governors . . . [a] copy of § IX of the WSSU Faculty Handbook, which details your appeal rights, is enclosed." (Id. ¶ 57.)

Plaintiff appealed the Board of Trustees' decision on August 21, 2018, "to the UNC Board of Governors following the procedures set out in the WSSU Faculty Handbook and Section 603 of the Code." (Id. ¶ 58.)

"Plaintiff's pay ended after August 2018." (Id. ¶ 65.) Plaintiff did not receive any notice that his pay would end. (Id. ¶ 67.) Plaintiff alleges WSSU processed Plaintiff's dismissal, even though "his appeal [was] still pending before the Board of Governors." (Id. ¶ 94.) "[A]round this time WSSU also started informing people that Plaintiff was 'dismissed,'" and Plaintiff's information was removed from the WSSU online faculty listings. (Id. ¶¶ 81–82.)

On May 23, 2019, the Board of Governors adopted the recommendation of its Committee on Personnel and Tenure and

upheld Plaintiff's discharge.[3] (Joint Status Report (Doc. 19) at
1.) Plaintiff appealed the Board of Governor's decision on
June 24, 2019, by filing a petition for judicial review in
Forsyth County Superior Court under Article 4 of North
Carolina's Administrative Procedures Act. (Id.) The Board of
Governors moved to stay Plaintiff's petition based on the issues
raised in the present action. (Id. at 2.) The Forsyth County
Superior Court granted the Board of Governors' motion until this
court's final disposition. (Id.; Doc. 20-1 at 1-2.)

### 6. Alleged Problems with Plaintiff's Appeal Process

Plaintiff raises several issues regarding his appeal
process.

Regarding his suspension, Plaintiff alleges "WSSU is only
authorized to use suspension as an 'exceptional' remedy." (Am.
Compl. (Doc. 6) ¶ 27.) He alleges that the Dismissal Letter "did
not provide[] notice of the 'exceptional' grounds that WSSU
alleged made suspension appropriate." (Id. ¶ 29.)

Defendant Berry allegedly "did not gather any information
from Plaintiff prior to delivering the Dismissal Letter in order

_____

[3] On January 17, 2020, the court requested an update
regarding the status of Plaintiff's appeal to the Board of
Governors of the University of North Carolina System. (Text
Order 01/17/2020.) The parties filed a Joint Status Report on
January 27, 2020. (Doc. 19.) On January 29, 2019, when Plaintiff
filed his Amended Complaint, his appeal was still pending before
the Board of Governors. (Am. Compl. (Doc. 6) ¶ 94.)

to determine if there were exceptional circumstances meriting suspension." (Id. ¶ 30.) Plaintiff further alleges that "there was no discussion about whether Plaintiff should be reassigned in lieu of suspension." (Id. ¶ 31.) Finally, Plaintiff alleges Defendants Berry and/or Robinson "failed to appropriately exercise her or his discretion by summarily suspending Plaintiff without exceptional cause." (Id. ¶ 32.)

He further alleges that there were "procedural inconsistencies among the letters Plaintiff received from the Board of Trustees on April 5, April 11, and August 6." (Id. ¶ 55.) In particular, "Plaintiff was informed in one letter that the Grievance Committee would be reviewing his appeal while another letter stated the Appeals Committee would be making the determination," and Plaintiff alleges "it is unclear if the Board of Trustees voted on the recommendation for Plaintiff's dismissal." (Id. ¶¶ 55-56.)

Next, "[o]n August 10, 2018, Plaintiff's attorney requested [Defendant] Brown provide 'all minutes/documents/notes/ recordings from the Board of Trustees' meetings (including committee meetings) concerning this matter.'" (Id. ¶ 59.) Plaintiff alleges that these items have yet to be provided. (Id. ¶ 60.)

Also on August 10, Plaintiff's counsel questioned Defendant Brown "as to whether he advised the Board of Trustees during the

deliberations," to which Defendant Brown responded,
"'[h]istorically, I would do a memo to the Board advising them
on their options and giving my assessment of how they should
decide. That was not done this time.'" (Id. ¶¶ 61-62.)

Plaintiff also takes issue with his pay ending. (Id. ¶ 86.)
Defendant Brown allegedly told Plaintiff "that pay 'is
guaranteed through the final decision on the discharge' in
accordance with Section 603 of the Code." (Id. ¶ 68.) The
Complaint includes a contradictory statement from Defendant
Brown, however; Plaintiff alleges Defendant Brown "represented
that the Chancellor is the 'final decision maker' regarding the
decision to stop Plaintiff's pay, and reiterated that Section
603 of the Code 'does not say that pay is guaranteed through the
final decision and any appeals of that decision.'" (Id. ¶ 70
(emphasis added).) Plaintiff alleges "[Defendant] Robinson made
the decision to stop Plaintiff's pay when he submitted his
appeal to the Board of Governors." (Id. ¶ 80.)

Section 603(9) of the Code "provides that the decision of
the Board of Trustees 'shall be final except that the faculty
member may, within 14 calendar days after receiving the
trustees' decision, file a written notice of appeal." (Id.
¶ 71a.) Section 603(10) states that "Suspension shall be

exceptional and shall be with full pay." (Id. ¶ 12.)[4] The WSSU

Faculty Handbook states that the Trustees' decision "shall be

final, except for an appeal to the Board of Governors . . . ."

(Defs.' Br. (Doc. 14) Ex. B, Excerpts from WSSC Faculty Handbook

(Doc. 14-2) at 2.)[5] Plaintiff alleges Section 603 of the Code has

been adopted pursuant to statutory authority and has the force

and effect of law. (Id. ¶ 85.)

Plaintiff alleges other WSSU faculty members, as well as

faculty members employed at other universities within the

University of North Carolina system, have been paid during their

appeals to the Board of Governors. (Id. ¶¶ 83–84.)

B.     **Procedural Background**

Plaintiff originally filed his Complaint in the Superior

Court for Forsyth County, North Carolina. (Doc. 1-1.) Defendants

removed the complaint to this court pursuant to 28 U.S.C.

§§ 1331, 1367(a), and 1441(a). (Notice of Removal (Doc. 1) at

1-2.) Plaintiff then filed an Amended Complaint. (Doc. 6.)

Defendants filed a motion to dismiss, (Doc. 13), and a

---

[4] Any references to the Code refer to the sections of the
Code as they were during the relevant time of Plaintiff's
action.

[5] All citations in this Memorandum Opinion and Order to
documents filed with the court refer to the page numbers located
at the bottom right-hand corner of the documents as they appear
on CM/ECF.

supporting memorandum, (Defs.' Br. (Doc. 14)). Plaintiff

responded, (Pl.'s Brief in Resp. to Mot. to Dismiss ("Pl.'s

Resp.") (Doc. 16)), and Defendants replied, (Defs.' Reply (Doc.

18)).

Plaintiff brings eight claims against Defendants. Claim One

alleges breach of contract against all Defendants. (Am. Compl.

(Doc. 6) ¶¶ 103–10.) Claim Two alleges a violation of Article I,

Section 19 of the North Carolina Constitution against all

Defendants. (Id. ¶¶ 112–33.) Claim Three alleges a violation of

Article I, Sections 1 and 35 of the North Carolina Constitution

against all Defendants. (Id. ¶¶ 134–37.) Claim Four alleges

retaliation in violation of N.C. Gen. Stat. § 126-87 against all

Defendants. (Id. ¶¶ 138–43.) Claim Five alleges a violation of

42 U.S.C. § 1983 for substantive and procedural due process

violations against all Defendants. (Id. ¶¶ 144–56.) Claim Six

alleges a violation of the Public Records Act, N.C. Gen. Stat.

§ 132-9, against all Defendants. (Id. ¶¶ 157–66.) Claim Seven

alleges a defamation claim against all Defendants. (Id. ¶¶ 167–

72.) Finally, Claim Eight alleges an invasion of privacy by

intrusion into seclusion claim against all Defendants. (Id.

¶¶ 173–79.)

Regarding Individual Defendants, Plaintiff sues Defendants

Robinson and Berry in their official and individual capacities

and sues Defendant Brown solely in his official capacity. (Id. at 1.)

## II.  **ANALYSIS**

Defendants challenge Plaintiff's Complaint on three grounds. First, Defendants argue they are immune from Plaintiff's contract, constitutional, and tort claims. (Defs.' Br. (Doc. 14) at 7.) Second, Defendants argue that Plaintiff is barred from suing Defendants Robinson and Berry in their individual capacities because WSSU is the real party at interest, and the Individual Defendants enjoy public official and qualified immunity. (Id. at 16–17.) Third, Defendants argue that Plaintiff's claims fail to state a claim. (Id. at 21.)

The court will dismiss Plaintiff's § 1983 claim against WSSU and Individual Defendants in their official capacities under Rule 12(b)(1), and against Individual Defendants in their individual capacities under Rule 12(b)(6). Because the court will dismiss Plaintiff's § 1983 claim, Plaintiff's sole federal question claim, and the court will decline to exercise supplemental jurisdiction over the remaining state law claims.

The court will first address Defendants' sovereign immunity arguments, then Defendants' qualified immunity arguments.

**A.  Sovereign Immunity and the 11th Amendment**

Defendants partially base their motion to dismiss on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2). (Defs.' Br. (Doc. 14) at 5.)

Under Federal Rule of Civil Procedure 12(b)(1), a plaintiff must prove by a preponderance of the evidence the existence of subject-matter jurisdiction. See Demetres v. East West Constr., Inc., 776 F.3d 271, 272 (4th Cir. 2015). A defendant may challenge subject-matter jurisdiction facially or factually. See Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). In a facial challenge, a defendant asserts that the allegations, taken as true, are insufficient to establish subject-matter jurisdiction. See id. The court then effectively affords a plaintiff "'the same procedural protection as he would receive under a rule 12(b)(6) consideration," taking the facts as true and denying the Rule 12(b)(1) motion if the complaint "alleges sufficient facts to invoke subject matter jurisdiction." Id. (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). In a factual challenge, a defendant asserts that the jurisdictional allegations are false, and the court may look beyond the complaint to resolve the disputed jurisdictional facts without converting the motion to one for summary judgment. Kerns, 585 F.3d at 192-93.

However, where the Eleventh Amendment bar has been asserted by a party, that party has the burden of proving that it is entitled to sovereign immunity. <u>Hutto v. S.C. Ret. Sys.</u>, 773 F.3d 536, 543 (4th Cir. 2014).[6]

Under Federal Rule of Civil Procedure 12(b)(2), a plaintiff must ultimately prove by a preponderance of the evidence that this court's personal jurisdiction over a defendant is proper. <u>Combs v. Bakker</u>, 886 F.2d 673, 676 (4th Cir. 1989). A plaintiff need only "make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." <u>Id.</u> (citation omitted).

---

[6] As a district court in the Eastern District of Virginia notes:

> Courts have not been uniform as to whether a dismissal due to Eleventh Amendment sovereign immunity should be examined through Rule 12(b)(1) or Rule 12(b)(6). "The recent trend, however, appears to treat Eleventh Amendment [i]mmunity motions under Rule 12(b)(1)." The distinction makes no practical difference, however. In the Court's Rule 12(b)(1) analysis, it provides [the plaintiff] the same procedural protections afforded under Rule 12(b)(6).

<u>Fleming v. Va. State Univ.</u>, Civil Action No. 3:15cv268, 2016 WL 927186, at *1 n.4 (E.D. Va. Mar. 4, 2016). The court finds this court's reasoning persuasive and will consider the Eleventh Amendment issue under Rule 12(b)(1). <u>See also</u> <u>McCants v. Nat'l Collegiate Athletic Ass'n</u>, 251 F. Supp. 3d 952, 955 (M.D.N.C. 2017) (evaluating Eleventh Amendment issues under Rule 12(b)(1)).

### 1. **Winston-Salem State University**

Winston-Salem State University is immune from suit as an "arm of the state" under the Eleventh Amendment. WSSU is an agency of the State of North Carolina. See N.C. Gen. Stat. § 116-4 (naming WSSU as one of the constituent institutions of the North Carolina system); Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1139 n.6 (4th Cir. 1990) (recognizing the Board of Governors of the University of North Carolina as an alter ego of the State of North Carolina); McAdoo v. Univ. of N.C. at Chapel Hill, 248 F. Supp. 3d 705, 718–19 (M.D.N.C. 2017) (holding that the University of North Carolina ("UNC") and its constituent institutions are "arms and alter egos" of the State of North Carolina for Eleventh Amendment immunity purposes).

Also, because WSSU is an agency of the State of North Carolina, it is not a "person" within the meaning of § 1983 and thus does not fall within the purview of § 1983. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 64 (1989). Moreover, even if WSSU qualified as a "person," the Eleventh Amendment would protect it from suit under § 1983. See Quern v. Jordan, 440 U.S. 332, 341 (1979); see also Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.").

Plaintiff also seeks injunctive relief. (Am. Compl. (Doc. 6) at 17.) While is it unclear whether this request for relief is related to the § 1983 claim specifically, out of an abundance of caution, the court will treat it as such. Plaintiff's § 1983 claim, to the extent Plaintiff seeks injunctive relief against WSSU, is similarly barred, because WSSU is not a "person" within the meaning of § 1983. See Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004) (distinguishing between suits for injunctive relief brought against states and state officials for Eleventh Amendment purposes); Green v. Mansour, 474 U.S. 64, 68 (1985) (same).

The court will therefore dismiss Plaintiff's § 1983 claim with respect to WSSU under Rule 12(b)(1). See Mann v. Winston Salem State Univ., No. 1:14CV1054, 2015 WL 5336146, at *4 (M.D.N.C. Sept. 14, 2015) (stating that the Eleventh Amendment would bar the plaintiff from bringing a § 1983 claim against WSSU).

### 2.  Monetary Relief Against Individual Defendants in Their Official Capacities

The United States Supreme Court has held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983," where the plaintiff is seeking money damages. Will, 491 U.S. at 71.

All three Individual Defendants are employed by the UNC system, which is an agency of the State of North Carolina. See Huang, 902 F.2d at 1139 n.6. To the extent Plaintiff sues Individual Defendants in their official capacities, they are state "officials acting in their official capacities", and therefore may not be sued under § 1983 for money damages. See Will, 491 U.S. at 71. Under Will, therefore, Plaintiff's § 1983 claim for money damages against the Individual Defendants acting in their official capacities must be dismissed under Rule 12(b)(1).

### B.   Individual Defendants in Their Individual Capacities and Qualified Immunity

Plaintiff sues Defendants Robinson and Berry in their individual capacities, thus neither the § 1983 official-capacity prohibition nor the Eleventh Amendment bar Plaintiff's § 1983 claim. Defendants, however, argue they did not violate Plaintiff's constitutional rights, and even if they did, they argue Defendants Robinson and Berry enjoy qualified immunity. (Defs.' Br. (Doc. 14) at 19.) Plaintiff seeks damages and injunctive relief against "further violations and requiring compliance with the law." (Am. Compl. (Doc. 6) at 17.)

### 1.   § 1983 and Qualified Immunity Background

"To state a claim under § 1983, a plaintiff must aver that a person acting under color of state law deprived him of a

constitutional right or a right conferred by a law of the United States." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 (4th Cir. 2009).

State officials sued in their individual capacities are "persons" within the meaning of § 1983 and are not absolutely immune from suit. Hafer v. Melo, 502 U.S. 21, 31 (1991). A government official sued in their individual capacity under § 1983 may, however, be entitled to qualified immunity. Id. at 25 ("[O]fficials sued in their personal capacities . . . may assert personal immunity defenses such as objectively reasonable reliance on existing law.").

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Id. (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously

permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis omitted). Defendant officials have the burden of pleading and proving qualified immunity. See, e.g., Cloaninger ex rel. Estate of Cloaninger v. McDevitt, 555 F.3d 324, 332 n.10 (4th Cir. 2009); Wilson v. Kittoe, 337 F.3d 392, 397 (4th Cir. 2003).

In determining whether qualified immunity applies, courts must engage in a two-step test "that asks first whether a constitutional violation occurred and second whether the right violated was clearly established." Gregg v. Ham, 678 F.3d 333, 338–39 (4th Cir. 2012) (quoting Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc)). "In determining whether a right is clearly established, courts consider 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Id. at 339 (quoting Henry, 652 F.3d at 534). This test, however, need not proceed in this sequence; "[t]he judges of the district courts and the courts of appeals [may] exercise their sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236.

Because Plaintiff must plausibly allege a constitutional violation and that the constitutional right violated was clearly established in order to defeat qualified immunity, the court

analyzes Plaintiff's allegations against Individual Defendants in their individual capacities under Rule 12(b)(6). See Tobey v. Jones, 706 F.3d 379, 386–87 (4th Cir. 2013); Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 315 (4th Cir. 2006); Bonnell v. Beach, 401 F. Supp. 3d 663, 672 (E.D. Va. 2019). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556–57). When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. Iqbal, 556 U.S. at 678. Further, this court liberally construes "the complaint, including all reasonable inferences therefrom, . . . in plaintiff's favor." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted). This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

## 2.  **Plaintiff's Claims**

Plaintiff alleges both substantive and procedural due process violations. First, regarding substantive due process, Plaintiff contends he has "suffered disciplinary action as a result of his exercise of his First Amendment right, thereby violating his right to substantive due process." (Am. Compl. (Doc. 6) ¶ 155.)

Second, Plaintiff alleges that "[t]here is no administrative remedy for Plaintiff to recover the damages he has suffered because of the violation of his right to procedural and substantive due process." (Id. ¶ 156.)

Third, Plaintiff also alleges WSSU processed his dismissal "without waiting for a final decision from the Board of Governors," which allegedly violated his substantive and procedural due process rights. (Id. ¶ 154.)

Fourth, regarding procedural due process, Plaintiff contends that Individual Defendants "did not provide Plaintiff with adequate notice and a hearing prior to depriving Plaintiff of his property interest in continuing to teach the summer courses," depriving him of his procedural due process right. (Id. ¶ 148.) He points to the "procedural irregularities" which "prejudiced" his appeal to the Board of Trustees. (Id. ¶ 149.) These include the inconsistencies between the three letters Plaintiff received concerning his appeal to the Board of

Trustees, "procedural changes . . . communicated to Plaintiff in the middle of the appeals process, thereby providing him with defective notice regarding the [appeal] procedures," and that "no response was received" regarding his objection to the record on April 23, 2018. (Id. ¶¶ 150–52.)

For each of Plaintiff's due process claims, the court will determine whether the facts in the complaint allege a violation of a constitutional right, then, if the complaint does allege a violation, the court will determine whether that right was clearly established at the time of the alleged violation.

The court will address Plaintiff's substantive due process allegations first and his procedural due process allegations second.

### a. Plaintiff's Substantive Due Process Allegations

Plaintiff alleges both a specific substantive due process violation of his First Amendment rights, as well as a general substantive due process violation. (Am. Compl. (Doc. 6) ¶¶ 154–55.) The court will address each in turn.

### i. Plaintiff's First Amendment Allegations

Plaintiff asserts a substantive due process claim based on an alleged violation of his First Amendment rights. (Am. Compl. (Doc. 6) ¶ 155; Pl.'s Br. (Doc. 16) at 17–18.)

Federal substantive due process rights serve as "an absolute check on certain governmental actions notwithstanding the fairness of the procedures used to implement those actions." Front Royal & Warren Cty. Indus. Park Corp. v. Town of Front Royal, 135 F.3d 275, 287–88 (4th Cir. 1998) (internal quotation marks omitted). "[G]overnmental action offends substantive due process only where the resulting deprivation of life, liberty, or property is so unjust that no amount of fair procedure can rectify it." Id. Because Plaintiff explicitly pleads a First Amendment violation, "that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing [Plaintiff's] claim[]." Cty. of Sacramento v. Lewis, 523 U.S. 833, 842 (1998) (quoting Albright v. Oliver, 510 U.S. 266, 273 (1994) (plurality opinion of Rehnquist, C.J.)); see also Edwards v. City of Goldsboro, 178 F.3d 231, 248 n.11 (4th Cir. 1999) (explaining that the First Amendment guides the analysis of the plaintiff's substantive due process claim, "not the more generalized notion of substantive due process"). The court thus looks to First Amendment jurisprudence to guide its analysis.

In determining whether qualified immunity applies with respect to this claim, the first issue the court must address is whether Plaintiff has plausibly alleged a constitutional deprivation based on the First Amendment.

"It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." Rankin v. McPherson, 483 U.S. 378, 383 (1987); Connick v. Myers, 461 U.S. 138, 142 (1983). Expressive conduct may constitute speech for purposes of the First Amendment. See, e.g., Texas v. Johnson, 491 U.S. 397, 404 (1989).

"To establish a free-speech claim under the First Amendment, plaintiff must establish (1) that the speech or activity complained of was protected speech or activity, and (2) that this protected speech or activity was the 'motivating' or 'but for' cause of the adverse employment action taken against the plaintiff." Munn-Goins v. Bd. of Trustees of Bladen Cmty. Coll., 658 F. Supp. 2d 713, 725 (E.D.N.C. 2009) (citing Wilkie v. Robbins, 551 U.S. 537, 556 (2007)).

In determining whether a public employer's action against an employee violates their First Amendment rights, the court "must balance the employee's interest 'as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" Campbell v. Galloway, 483 F.3d 258, 266 (4th Cir. 2007) (quoting Connick, 461 U.S. at 142). Indeed, when the government functions "[a]s an employer, the government is entitled to maintain discipline and

ensure harmony as necessary to the operation and mission of its agencies." McVey v. Stacy, 157 F.3d 271, 277 (4th Cir. 1998).

Thus, the court must first determine "whether the speech at issue may be 'fairly characterized as constituting speech on a matter of public concern.'" Campbell, 483 F.3d at 266 (quoting Connick 461 U.S. at 146). "Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community." Kirby v. City of Elizabeth City, 388 F.3d 440, 446 (4th Cir. 2004). "Personal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern that are protected by the First Amendment, but are matters more immediately concerned with the self-interest of the speaker as employee." Stroman v. Colleton Cty. Sch. Dist., 981 F.2d 152, 156 (4th Cir. 1992). "If the court determines that the activity or speech does not involve a matter of public concern, the First Amendment analysis ends and plaintiff loses." Munn-Goins, 658 F. Supp. 2d at 726 (citing Connick, 461 U.S. at 146).

Here, however, the court cannot determine what speech or expressive conduct Plaintiff alleges caused Defendants to discipline him that demonstrates "more than a sheer possibility that a defendant has acted unlawfully." At no point in the Amended Complaint does Plaintiff allege any speech or expressive

conduct that resulted in his dismissal; indeed, the Complaint does not contain facts concerning any statements or expressive conduct from Plaintiff at all. The only allegation in the Complaint that comes close to being an allegation of "activity" on the part of Plaintiff is when Defendant Brown told Plaintiff's attorney, "'there are cameras outside of the building where the alleged incident occurred, but there are only a few cameras inside and none on the hall where the confrontation occurred . . . .'" (Am. Compl. (Doc. 6) ¶ 38.) This allegation, however, does not contain any "factual content that allows the court to draw the reasonable inference that the defendant[s are] liable" nor demonstrates "more than a sheer possibility that [] defendant[s] ha[ve] acted unlawfully." Iqbal, 556 U.S. at 678. Plaintiff includes no factual content about what this confrontation concerned or what occurred in the confrontation that could "allow the court to draw the reasonable inference" that Defendants violated Plaintiff's First Amendment rights.

The Dismissal Letter sheds some light on what Plaintiff allegedly said but still lacks sufficient facts for Plaintiff to plead a First Amendment violation with any particularity. The Dismissal Letter states that Plaintiff "sent derogatory and racially charged communications" to one of his department chairs. (Dismissal Letter (Doc. 14-1) at 2.) Even taking this as

true and in favor of Plaintiff, the facts contained in the complaint and the Dismissal Letter are not sufficient to allow the court to "draw the reasonable inference" that Plaintiff's statements addressed matters of public concern. These facts therefore do not create "more than a sheer possibility that [the Individual Defendants have] acted unlawfully." See Campbell, 483 F.3d at 267 ("Personal grievances [and] complaints about conditions of employment . . . do not constitute speech about matters of public concern.")

The court finds that there are insufficient facts to support a plausible claim for a First Amendment violation. The court will therefore dismiss Plaintiff's First Amendment claim under Rule 12(b)(6).

### b.  Plaintiff's Remaining Substantive Due Process Allegations

Plaintiff also alleges that "WSSU has processed Plaintiff's dismissal without waiting for a final decision from the Board of Governors thereby violating Plaintiff's right to procedural and substantive due process." (Am. Compl. (Doc. 6) ¶ 154.) While Plaintiff's § 1983 claim against WSSU is barred, see supra Part II.A.1, Plaintiff alleges elsewhere in the Amended Complaint that "Chancellor Robinson . . . remov[ed] Plaintiff from the WSSU website while he [was] still employed by WSSU; suspend[ed] Plaintiff; continu[ed] Plaintiff's suspension even when some

grounds for dismissal were unproven; and direct[ed] that
Plaintiff's pay be stopped after his appeal to the UNC Board of
Governors," (Am. Compl. (Doc. 6) ¶ 140), and "Defendants'
decision to deny Plaintiff's pay [was] arbitrary and
capricious." (Id. ¶ 120.) Liberally construing all reasonable
inferences in Plaintiff's favor, the court finds that Plaintiff
attributes the processing of his dismissal to Individual
Defendants in addition to WSSU as an institution.

Plaintiff also points to "several procedural
irregularities" that allegedly prejudiced him during his appeals
to the Board of Trustees and the Board of Governors. (Id.
¶¶ 149-54.)

"[T]he Due Process Clause contains a substantive component
that bars certain arbitrary, wrongful government actions
regardless of the fairness of the procedures used to implement
them." Zinermon v. Burch, 494 U.S. 113, 125 (1990) (internal
quotation marks omitted). "[O]nly the most egregious official
conduct can be said to be 'arbitrary in the constitutional
sense.'" Cty. of Sacramento, 523 U.S. at 846 (quoting Collins v.
City of Harker Heights, 503 U.S. 115, 129 (1992)). That is, "a
violation of an individual's substantive due process rights
exists only when the official action is 'so egregious, so
outrageous, that it may fairly be said to shock the contemporary
conscience.'" Kerr v. Marshall Univ. Bd. of Governors, 824 F.3d

62, 80 (4th Cir. 2016) (quoting Hawkins v. Freeman, 195 F.3d 732, 738 (4th Cir. 1999)). "And evidence that a decision was unwise or mistaken cannot establish a substantive due process claim." Huang, 902 F.2d at 1142. "The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." Bishop v. Wood, 426 U.S. 341, 350 (1976).

The court cannot find that Defendants Robinson and Berry's conduct was arbitrary, capricious, or egregious. The Amended Complaint does not include allegations that Defendants Robinson and Berry acted in bad faith or ill will. Plaintiff alleges these Defendants processed his dismissal without waiting for the Board of Governor's final decision, in violation of the WSSU Faculty Handbook and the Code. (Am. Compl. (Doc. 6) ¶¶ 94, 97, 154.) At most, however, this was an "incorrect or ill-advised personnel decision[]," against which substantive due process does not protect. Bishop, 426 U.S. at 349-50 ("We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs."). The court therefore finds Plaintiff fails to state a claim for a general violation of substantive due process under Rule 12(b)(6).

### c. Plaintiff's Procedural Due Process Allegations

Plaintiff also alleges two procedural due process violations: he first alleges that "Defendants did not provide Plaintiff with adequate notice and a hearing prior to depriving Plaintiff of his property interest in continuing to teach the summer courses," and second, that Defendants improperly processed his dismissal before the Board of Governors could issue its decision. (Am. Compl. (Doc. 6) ¶¶ 140, 148, 154.)

### i. Plaintiff's Property Interest in Teaching Summer Courses

To state a procedural due process claim, a plaintiff must: (1) "demonstrate that he had a constitutionally cognizable life, liberty, or property interest"; (2) "he must show that the deprivation of that interest was caused by some form of state action"; and (3) "he must prove that the procedures employed were constitutionally inadequate." Sansotta v. Town of Nags Head, 724 F.3d 533, 540 (4th Cir. 2013) (internal quotation marks omitted).

"In order to have a protected property interest in his employment, a person must possess a legitimate claim of entitlement to it — created, for example, by contract or state law." Ridpath, 447 F.3d at 307 n.14 (citing Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577-78 (1972)). A tenured teacher's employment rights constitute a sufficient property

interest to warrant due process protection. See Kalme v. W. Va.
Bd. of Regents, 539 F.2d 1346, 1348 (4th Cir. 1976) (citing
Roth, 408 U.S. 564 (1972)); Slochower v. Bd. of Educ., 350 U.S.
551 (1956)) (holding that the rights of a tenured professor
sufficiently constitute a property interest entitled to due
process protection).

Here, however, Plaintiff alleges that he taught summer
courses "under a separate, supplemental, teaching contract."
(Am. Compl. (Doc. 6) ¶ 22.) Plaintiff alleges this created a
property interest "[d]ue to the substantial longevity of
Plaintiff's teaching summer courses." (Id. ¶ 147.) Plaintiff
therefore does not ground his property interest in his rights as
a tenured professor.

While a "property interest in employment can, of course, be
created by ordinance, or by an implied contract," Bishop v.
Wood, 426 U.S. 341, 344 (1976), the North Carolina Supreme Court
has "repeatedly held that in the absence of a contractual
agreement between an employer and an employee establishing a
definite term of employment, the relationship is presumed to be
terminable at the will of either party without regard to the
quality of performance of either party," Kurtzman v. Applied
Analytical Indus., Inc., 347 N.C. 329, 331, 493 S.E.2d 420, 422
(1997). Even so, as the Supreme Court has dictated, "the
existence of rules and understandings, promulgated and fostered

by state officials, that may justify [a plaintiff's] legitimate claim of entitlement to continued employment absent 'sufficient cause.'" Perry v. Sindermann, 408 U.S. 593, 602–03 (1972) overruled on other grounds by Rust v. Sullivan, 500 U.S. 173 (1991).

Here, Plaintiff fails to submit any facts that his contract for teaching summer classes "establish[ed] a definite term of employment," or that there were "rules and understandings, promulgated and fostered by state officials," that could justify Plaintiff's alleged property interest in continued employment. Plaintiff instead bases his property interest allegedly arising out of this contract in his allegations that that "[b]ased on prior practice over the years, Plaintiff reasonably believe he would be able to teach summer courses at WSSU as long as he remained employed by WSSU," and that "[d]ue to the substantial longevity of Plaintiff's teaching summer courses, Plaintiff is entitled to adequate procedural protections to safeguard his property interest in continued employment." (Am. Compl. (Doc. 6) ¶¶ 109, 147.) These allegations are not sufficient to demonstrate a protected property interest in continued

employment;[7] indeed, Plaintiff's allegations are essentially "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which] do not suffice." Iqbal, 556 U.S. at 678; see also Byerly v. Va. Polytechnic Inst. & State Univ., Civil Action No. 7:18-cv-16, 2019 WL 1370873, at *5 (W.D. Va. Mar. 25, 2019) (finding that the plaintiff "has alleged no source rooted in Virginia law or a policy of Virginia Tech for his claim of entitlement"); but see Zimmeck v. Marshall Univ. Bd. of Governors, Civil Action No. 3:13-14743, 2014 WL 108668, at *7 (S.D. W. Va. Jan. 10, 2014) ("Many courts have taken the pragmatic approach of assuming the existence of a protected property interest at the motion to dismiss stage."). Plaintiff therefore cannot state a procedural due process claim arising out of his contract for summer course instruction by failing to allege a plausible property interest.

---

[7] The court notes that Plaintiff may have qualified as a "career State employee" under N.C. Gen. Stat. § 126-35, which protects an employee who "(1) [i]s in a permanent position with a permanent appointment; and (2) [h]as been continuously employed by the State of North Carolina . . . for the immediate 12 preceding months." N.C. Gen. Stat. § 126-1.1. Plaintiff, however, makes no allegations that his employment teaching summer classes would qualify him as a "career State employee" for the purposes of the statute and the court declines to read these allegations into the Complaint; to do so would impermissibly stretch the court's mandate to liberally construe "the complaint, including all reasonable inferences therefrom, . . . in the plaintiff's favor." Estate of Williams-Moore, 335 F. Supp. 2d at 646 (citation omitted).

### d.  __Plaintiff's Other Procedural Due Process Allegations__

Plaintiff also alleges that "WSSU has processed Plaintiff's dismissal without waiting for a final decision from the Board of Governors thereby violating Plaintiff's right to procedural and substantive due process." (Am. Compl. (Doc. 6) ¶ 154.) For the same reasons as stated above, the court will construe this allegation as against Defendants Robinson and Berry as well. See supra Part II.B.2.b. Plaintiff points to "several procedural irregularities" that allegedly prejudiced him during his appeals to the Board of Trustees and the Board of Governors. (Id. ¶¶ 149–54.)

To state a procedural due process claim, a plaintiff must: (1) "demonstrate that he had a constitutionally cognizable life, liberty, or property interest"; (2) "he must show that the deprivation of that interest was caused by some form of state action"; and (3) "he must prove that the procedures employed were constitutionally inadequate." Sansotta, 724 F.3d at 540 (internal quotation marks omitted).

"In order to have a protected property interest in his employment, a person must possess a legitimate claim of entitlement to it — created, for example, by contract or state law." Ridpath, 447 F.3d at 307 n.14 (citing Roth, 408 U.S. at 577–78). A tenured teacher's employment rights constitute a

sufficient property interest to warrant due process protection. See Kalme, 539 F.2d at 1348.

Liberally construing "the complaint, including all reasonable inferences therefrom, . . . in plaintiff's favor," it appears that Plaintiff alleges an interest arising from his tenured employment contract, which "specifically incorporates the 'rules, regulations and policies' of the Board of Governors and Board of Trustees, including Section 603 of the Code." (Am. Compl. (Doc. 6) ¶ 105.) Section 603 of the Code provides that the Board of Trustees' decision is final except when the faculty member appeals to the Board of Governors. (Id. ¶ 71a.) Section 603 further provides that a "faculty member who is the beneficiary of institutional guarantees of tenure," which Plaintiff does, "shall enjoy protection against unjust and arbitrary application of disciplinary penalties." (Id. ¶ 89.) Plaintiff therefore properly pleads a property interest based on his rights as a tenured professor.

Having determined that Plaintiff has a protected property interest, the court will thus address whether Plaintiff plausibly pleads a procedural due process violation. To do so, "courts must consult the entire panoply of predeprivation and postdeprivation process provided by the state." Fields v. Durham, 909 F.2d 94, 97 (4th Cir. 1990). Generally, "the Due Process Clause normally requires a hearing 'before the State

deprives a person of liberty or property.'" Id. (quoting

Zinermon 494 U.S. at 984). "The fundamental requirement of due

process is the opportunity to be heard at a meaningful time and

in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333

(1976) (internal quotation marks omitted). This "pretermination

'hearing,' though necessary, need not be elaborate." Cleveland

Bd. of Educ. v. Loudermill, 470 U.S. 532, 545 (1985). "The

tenured public employee is entitled to oral or written notice of

the charges against him, an explanation of the employer's

evidence, and an opportunity to present his side of the story."

Id. at 546.

In order to determine what process was due and when, the

court must first determine when the alleged deprivation

occurred.

The court first notes that Plaintiff cannot state a

deprivation claim for the time he was suspended with pay prior

to the Board's hearing. The Supreme Court has stated that "in

those situations where the employer perceives a significant

hazard in keeping the employee on the job, it can avoid the

problem by suspending with pay." Cleveland Bd. of Educ., 470

U.S. at 544-45; see also Mansoor v. Cty. of Albemarle, 124 F.

Supp. 2d 367, 380 (W.D. Va. 2000) ("Under the federal standard

of what process is due, the plaintiff's suspension with pay did

not violate the Fourteenth Amendment."). That is precisely what

happened here; Plaintiff was suspended with pay for a year, while his appeal took its course. (Am. Compl. (Doc. 6) ¶¶ 25, 65.) "To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." Cleveland Bd. of Educ., 470 U.S. at 546. Thus, Plaintiff's deprivation did not occur at least until WSSU stopped paying Plaintiff in August 2018; at that point, he was no longer suspended with pay.

At that point, however, Plaintiff had received a copious amount of process: Plaintiff received the Dismissal Letter and he submitted his notice of appeal to the Faculty Hearing Committee, (Am. Compl. (Doc. 6) ¶¶ 26, 34); the Faculty Hearing Committee held a hearing, and Chancellor Robinson requested the Faculty Hearing Committee hold another hearing to take evidence from Plaintiff, during which Plaintiff declined to submit further evidence, (id. ¶¶ 44, 47–48); Defendant Robinson overruled the Faculty Hearing Committee, as was his right under the Faculty Handbook, (id. ¶ 50; Doc. 14-2 at 5–6); Plaintiff appealed Defendant Robinson's recommendation to the Board of Trustees, (id. ¶ 51); Plaintiff received at least two letters containing instructions about his appeal to the Board of Trustees, (id. ¶ 52); finally, the Board of Trustees notified Plaintiff it was upholding Defendant Robinson's recommendation "based on 'the written transcript and the related exhibits,'"

(id. ¶ 54). All of this occurred prior to the end of August 2018, when WSSU stopped paying Plaintiff. All of this would therefore qualify as "predeprivation" process.

The process Plaintiff received met, and likely exceeded that which is required: "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Cleveland Bd. of Educ., 470 U.S. at 546. Even if Defendants violated the Code or the WSSU Faculty Handbook, "'[a]lleged violations of due process in the deprivation of a protectable interest are to be measured against a federal standard of what process is due and that standard is not defined by state-created procedures, even when those state-created procedures exceed the amount of process otherwise guaranteed by the Constitution.'" Gray v. Laws, 51 F.3d 426, 438 (4th Cir. 1995) (quoting Riccio v. Cty. Of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990)). Here, Defendants provided Plaintiff with "the amount of process . . . guaranteed by the Constitution"; he therefore cannot succeed on his procedural due process claim. See id. ("'If state law grants more procedural rights than the Constitution would otherwise require,' as do the North Carolina procedures [the plaintiff] claims were violated, 'a state's failure to abide by that law is not a federal due process issue.'" (quoting Riccio, 907 F.2d at 1469); see also Cleveland Bd. of Educ., 470 U.S. at 541 ("[O]nce

it is determined that the Due Process Clause applies, 'the question remains what process is due.' The answer to that question is not to be found in the [state] statute.").

The procedural deficiencies Plaintiff relies upon to support his procedural due process claim are not constitutionally material. For instance, while Plaintiff alleges the Board of Trustees' decision was made upon the "'written transcript and exhibits' rather than the whole record," (Am. Compl. (Doc. 6) ¶ 153), he nevertheless received "an explanation of the employer's evidence." Cleveland Bd. of Educ., 470 U.S. at 546. Plaintiff does not allege that the Board of Trustees was required to make its decision based upon the "whole record," nor what parts of the "whole record" which were not considered would have been material in his appeal. Further, while a plaintiff can make out a separate procedural due process claim based on a violation in the appeal process itself, see Doe v. Va. Polytechnic Inst. & State Univ., 400 F. Supp. 3d 479, 502 (W.D. Va. 2019), such a claim arises when, for example, the original factfinder's decision is overturned based on new evidence submitted on appeal, to which the plaintiff was not given adequate notice or time to respond, and the defendant did not give the plaintiff prior notice of the appeal board's meeting nor permit him to attend the appeal board's meeting — essentially, "a second fact-finding trial [where the plaintiff

is] severely limited [in] his ability to defend himself." Doe v.
Alger, 175 F. Supp. 3d 646, 661-62 (W.D. Va. 2016). That is not
the case here. Plaintiff does not allege that new evidence was
put forth on appeal. See Va. Polytechnic Inst. & State Univ.,
400 F. Supp. 3d at 502 (dismissing due process violation claim
based on alleged appeal deficiencies when the initial hearing
decisions were upheld and the plaintiffs did not identify any
errors such as new evidence presented without opportunity to
respond).

Regarding notice, Plaintiff alleges procedural
inconsistencies among the three letters he received from the
Board of Trustees concerning his appeal. (Am. Compl. (Doc. 6)
¶ 55.) Specifically, however, he only alleges that he was
informed in one letter that the Grievance Committee would be
reviewing his appeal while another stated that the Appeals
Committee would be making the decision. (Id.) These letters were
sent in April 2018, but the Board of Trustees did not issue its
decision until August 2018. (Id. ¶¶ 52, 55, 57.) Plaintiff
alleges that these letters resulted in defective notice. (Id.
¶¶ 150-51.) This fact alone does not "nudge[] the[] claim[]
across the line from conceivable to plausible." Twombly, 500
U.S. at 555, 570. In Alger, the court found that "[t]aken
together, these allegations [of new evidence, no notice, and no
opportunity to respond] show that [the defendant] denied Doe a

"meaningful hearing." Alger, 175 F. Supp. 3d at 662. That Plaintiff may not have known the precise committee which would be handling his appeal does not, on its own, support a procedural due process claim.

Further, Plaintiff also had and has several postdeprivation state-law remedies. The district court's analysis in Burch v. NC Dep't of Pub. Safety, 158 F. Supp. 3d 449 (E.D.N.C. 2016), is instructive on this issue. There, a special agent for Alcohol Law Enforcement brought substantive and procedural due process claims, among others, when she was forced to take an unpaid leave of absence in order to have a baby. Id. at 456. The district court first found that the "plaintiff received pre-deprivation due process commensurate with the limited nature of her alleged property and liberty interests." Id. at 460. The court then granted the defendant's motion to dismiss the plaintiff's procedural due process claim, stating:

> With regard to post-deprivation due process, plaintiff still has available to her a number of state law remedies. Plaintiff initially filed this action in the Superior Court of Carteret County, North Carolina, and she maintains a number of state law causes of action. In particular, plaintiff retains claims for breach of contract and civil conspiracy, as well as claims under the N.C. Constitution for alleged violations of her rights to substantive due process, procedural due process, and equal protection. These claims demonstrate suitable state law remedies for plaintiff's alleged due process deprivation.

Id. at 460. Such is the case here. Plaintiff not only originally filed his claim in state court, but he also appealed the Board of Governor's decision by filing a Petition for Judicial Review in Forsyth County Superior Court. (Doc. 19 at 1.) Plaintiff, like the plaintiff in Burch, brings "a number of state law causes of action," three of them identical to those in Burch: breach of contract and two claims under the North Carolina Constitution for alleged violations of substantive and procedural due process. (Am. Compl. (Doc. 6) ¶¶ 103-43.) Plaintiff's "claims demonstrate suitable state law remedies for plaintiff's alleged due process deprivation." See Burch, 158 F.3d at 460.

Because the court has found that Plaintiff was "afforded pre-deprivation due process commensurate with the degree of [his] claimed entitlements, and where []he has available to h[im] adequate post-deprivation state law remedies," Plaintiff's § 1983 claim against Individual Defendants to the extent the claims are brought against them in their individual capacities must be dismissed. See id.

### e.    Due Process Conclusion

Because Plaintiff fails to state a § 1983 claim for either a substantive or procedural due process violation, Individual Defendants Robinson and Berry have demonstrated that qualified immunity applies. See Gregg, 678 F.3d at 341 n.7 ("To prevail

under qualified immunity, Ham has to show <u>either</u> that there was no constitutional violation <u>or</u> that the right violated was not clearly established." (emphasis added)). Because qualified immunity applies here, Plaintiff's § 1983 claim is barred.

### 3. <u>Injunctive Relief Against Individual Defendants</u>

Plaintiff also seeks injunctive relief. (Am. Compl. (Doc. 6) at 17.)

<u>Ex parte Young</u>, 209 U.S. 123, 159–60 (1908), provides an exception to Eleventh Amendment immunity where suit is brought against state officials in their official capacities and "(1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective." <u>Republic of Paraguay v. Allen</u>, 134 F.3d 622, 627 (4th Cir. 1998). However, "the exception does not permit federal courts to entertain claims seeking retrospective relief, either compensatory or other, for completed, not presently ongoing violations of federally protected rights." <u>Id.</u>; <u>see also</u> <u>Green</u>, 474 U.S. at 67–68 ("<u>Young</u> also held that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a <u>continuing</u> violation of federal law." (emphasis added)). "For purposes of Eleventh Amendment analysis, it is sufficient to determine that [the plaintiff] alleges facts that, if proven, would violate federal law and that the requested

relief is prospective." S.C. Wildlife Fed'n v. Limehouse, 549 F.3d 324, 332 (4th Cir. 2008).

The court has already determined that Plaintiff has not pled facts sufficient to state a plausible claim for relief under § 1983. See supra Part II.B.2. Therefore, to the extent Plaintiff seeks injunctive relief under § 1983 against Individual Defendants, Plaintiff cannot do so because Plaintiff has not "allege[d] facts that, if proven, would violate federal law." S.C. Wildlife Fed'n, 549 F.3d at 332. Because Plaintiff fails to state a § 1983 claim for procedural and substantive due process violation, Plaintiff cannot meet the requirements of Ex parte Young and it therefore will not apply.

Because Ex parte Young does not apply, Plaintiff's § 1983 claim for injunctive relief against Individual Defendants in their official capacities is barred under Rule 12(b)(1).

**C.   The Court Declines to Exercise Supplemental Jurisdiction over the Remaining State Law Claims**

Because the court has disposed of Plaintiff's sole federal law claim, the court has discretion to exercise jurisdiction over Plaintiff's remaining seven state-law claims. See 28 U.S.C. § 1367. The court will decline to do so. The Supreme Court has counseled in favor of courts dismissing the remaining state-law claims if the court dismisses the federal claims: "[I]f the federal claims are dismissed before trial, even though not

insubstantial in a jurisdictional sense, the state claims should be dismissed as well." <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726 (1966). The Court further counseled that, "if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." <u>Id.</u> at 726–27. Such is the case here; Plaintiff did not even add his § 1983 claim until he filed his Amended Complaint. (Notice of Removal (Doc. 1) at 2.) There are still seven state-law claims pending, which will be dismissed without prejudice and "left for resolution to state tribunals."

## III. <u>CONCLUSION</u>

The court will dismiss Plaintiff's Fifth Claim against Defendant WSSU and Individual Defendants in their official capacities under Rule 12(b)(1) without prejudice, and against Individual Defendants in their individual capacities under Rule 12(b)(6) with prejudice.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss, (Doc. 13), is **GRANTED** with respect to Claim Five as to WSSU and Individual Defendants in their official capacities pursuant to Rule 12(b)(1) and as to Individual Defendants in their individual capacities pursuant to Rule 12(b)(6) and Claim Five is hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that the court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's state-law claims and **DISMISSES** Plaintiff's state-law claims **WITHOUT PREJUDICE.**

A judgment reflecting this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 30th day of March, 2020.

_____
United States District Judge